232 July 1, 2026 No. 627

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GLEN JUNIOR COUCH,
*Defendant-Appellant.*

Lane County Circuit Court
109705024; A180915

Charles M. Zennaché, Judge.

Submitted May9, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Shawn Wiley, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Petitioner appeals an order that partially dismissed his petition for post-conviction deoxyribonucleic acid (DNA) testing. In 1997, petitioner pleaded guilty to and was convicted of first-degree kidnapping, ORS 163.235; first-degree unlawful sexual penetration, ORS 163.411; first-degree rape, ORS 163.375; and first-degree sexual abuse, ORS 163.427. In 2023, the trial court granted petitioner's request to perform post-conviction DNA testing under ORS 138.692 on vaginal swabs that had been taken from the victim during the initial investigation. But the trial court denied petitioner's request in the same petition to perform DNA testing on swabs taken from the victim's labia, the victim's breasts, the victim's fingernails and broken fingernails, the victim's bedsheet and underwear, the victim's underwear and nightgown worn at the hospital following the assault, and pubic hair combings taken from the victim and petitioner (hereafter "the other evidence"). We affirm the trial court's ruling for the reasons explained below.

In a single assignment of error, petitioner makes two arguments that the trial court erred when it denied his request to test the other evidence under ORS 138.692(6)(d). That provision requires a court to "order the DNA testing requested" in the motion if the court finds, "[i]n light of all the evidence, there is a reasonable probability that, had exculpatory results been available at the time of the underlying prosecution, the person would not have been prosecuted or convicted of the offense." ORS 138.692(6)(d). First, petitioner contends that the trial court mistakenly focused on the rape conviction instead of recognizing a reasonable probability that he would not have been prosecuted or convicted of the other offenses if exculpatory DNA test results from the other evidence had been available. Second, petitioner asserts that the absence of his DNA on the other evidence samples would create a reasonable probability that the prosecution or a jury would believe his alternative theories that his DNA was planted in the vaginal swab or that the crimes were committed by someone else in his patrilineal line.[1] The state responds that petitioner's arguments on

---

[1] Petitioner suggested that the DNA could be attributed to his brother.

appeal are unpreserved. The state also argues that petitioner's arguments are moot because the results from 2023 DNA testing of the vaginal swabs permitted by the trial court, which were returned while this case was on appeal, establish that petitioner was the source.[2] As we explain below, petitioner's arguments are preserved and not moot, and, on the merits, we affirm the trial court's partial denial of the motion to DNA test the other evidence.

The parties are familiar with the history of the criminal case, petitioner's challenges to his convictions, and the facts underlying the motion for post-conviction DNA testing. We thus do not describe them in detail in this non-precedential memorandum opinion. We discuss the facts below when necessary to adequately explain the reason for our decision to affirm the trial court's order.

The state argues that petitioner failed to preserve his arguments on appeal. We reject that argument and conclude that petitioner preserved his arguments.

The state also contends that petitioner's arguments are moot because the state received the results of the DNA test of the vaginal swab while this case was on appeal, and the results are inculpatory. The state moved to dismiss the appeal as moot, and the Appellate Commissioner denied the motion. The state also raises mootness in its answering brief. We conclude that petitioner's appeal is not moot for the same reasons expressed by the appellate commissioner.

Turning to the merits, the trial court did not err in partially denying the motion to DNA test the other evidence. We evaluate the evidence before the trial court when it ruled on the motion. *State v. Akins*, 373 Or 476, 482, 568 P3d 174 (2025). The apparently inculpatory DNA test results from the vaginal swab were not before the trial court. We thus do not consider them in evaluating whether the trial court erred when it denied petitioner's request for testing of the other evidence.

_____

[2] An Oregon State Police Laboratory report attached to the state's answering brief states that it was 2.56 septillion times ($2.56 \times 10^{24}$) more likely that the vaginal swab sample contained DNA from the victim and petitioner, rather than DNA from the victim and "an unknown, unrelated individual."

Under ORS 138.692(1), a petitioner filing a motion for DNA testing must support their motion with an affidavit that "(1) contain[s] a statement that the person is innocent of the offense for which the person was convicted or of the conduct underlying any mandatory sentence enhancement; (2) identif[ies] the specific evidence to be tested; and (3) identif[ies] a theory of defense that DNA testing would support." *State v. Couch*, 277 Or App 566, 568, 371 P3d 1240, *rev den*, 360 Or 465 (2016) (internal quotation marks omitted).[3] Additionally, ORS 138.692(6) and (7) provide criteria for a petitioner to meet when moving for post-conviction DNA testing.

The trial court must evaluate the motion for DNA testing "[i]n light of all the evidence," which includes evidence from the original prosecution. ORS 138.692(6)(d), (7) (d); *see also State v. Romero*, 274 Or App 590, 598, 360 P3d 1275 (2015), *rev den*, 358 Or 794 (2016) (explaining that "an assessment of whether doubt [about the conviction] has been created logically requires looking at the trial evidence"). If the court finds that there is a reasonable probability that exculpatory DNA test results would result in the change of outcomes identified in ORS 138.692(6)(d) then it must "order the DNA testing requested in [the] motion." If it does not make that finding but finds there is a reasonably probability that exculpatory DNA test results would have resulted in "a more favorable outcome to the underlying prosecution" then the court may order "the testing requested in [the] motion." ORS 138.692(7)(d).

Petitioner does not argue that the trial court incorrectly interpreted ORS 138.692. That is, petitioner acknowledges in his brief that a trial court could grant testing of some items and deny testing of other items when there is *not* a reasonable probability that exculpatory DNA test

---

[3] As the parties are likely aware, in that case, defendant appealed the trial court's denial of his 2011 motion for DNA testing. We affirmed the trial court's ruling, "[b]ecause defendant did not satisfy the statutory requirements" of ORS 138.692(1) that required "an affidavit that contained (1) a statement that he was innocent of the crimes for which he had been convicted; (2) a description of the specific evidence to be tested; or (3) a defense theory of the case." *Couch*, 277 Or App at 569.

results of the other items would have changed the outcome as required in ORS 138.692(6)(d) or (7)(d).[4]

Instead, petitioner argues that the trial court erred when applying ORS 138.692(6)(d) and (7)(d) because the evidence before the trial court established a reasonable probability that exculpatory results from testing *all* the requested items, including the other evidence, would have resulted in the outcomes identified in those subsections. The state responds that the trial court correctly determined that there is not a reasonable probability that exculpatory results from testing the other evidence—for example, the absence of petitioner's DNA on the other evidence—would have resulted in a more favorable outcome. We agree that the trial court did not err when it partially granted and partially denied the requested testing.

The trial court essentially determined that a DNA test result that showed that petitioner's DNA was not on the vaginal swab was the only exculpatory result that would have had a reasonable probability of resulting in a more favorable outcome in the original prosecution. As the court wrote in its letter opinion, the "only thing that would have been exculpatory would have been if DNA testing using today's techniques would have either ruled [petitioner] out or definitively identified another male in his family (his brother perhaps) as the source of the DNA found in victim's vagina." The trial court also determined that "finding DNA of another in any [of the other evidence]" would not have stopped the state from "proceed[ing] with prosecution given the victim's identification of [petitioner][.]"

The trial court did not err when it made that determination. In light of all the evidence, there is not a reasonable probability that exculpatory results from testing the other evidence would have resulted in the state not prosecuting petitioner or in petitioner not being convicted, ORS 138.629(6)(d), and there is not a reasonable probability of a

---

[4] We use shorthand terms like "changed the outcome" or "more favorable outcome" to refer to the standards in ORS 138.692(6)(d) and ORS 138.692(7)(d) instead of repeating those separate standards each time we reference them. We have analyzed them separately and conclude that the trial court did not err under (6)(d) or (7)(d) even though we address them jointly in this nonprecedential memorandum opinion.

more favorable outcome to the underlying prosecution, ORS 138.692(7)(d). The victim identified petitioner as the assailant. Petitioner admitted to sexual contact with the victim but denied raping her. He then pleaded guilty to all charges, including rape. Prior post-conviction DNA testing, in 2008, identified male DNA on a vaginal swab and showed a 1 in 1,277 chance that the male DNA was *not* petitioner's DNA or the DNA of one of his patrilineal relatives. Petitioner maintained his innocence and suggested that law enforcement had planted his DNA or that his brother had raped the victim. There is no realistic chance that the absence of petitioner's DNA on the other evidence—the victim's clothing, the hospital bedsheets, swabs taken from the victim's breasts, the victim's fingernail clippings or broken finger nails, and pubic hair combings—would have caused the state not to charge petitioner as it did, would have resulted in difference convictions, or would have resulted in a more favorable outcome. Put simply, the presence of petitioner's DNA on the vaginal swab would have made it implausible that petitioner did not commit the offense. Conversely, the absence of petitioner's DNA on the vaginal swab, which on this record likely would have meant the presence of petitioner's brother's DNA, would have created a reasonable probability of dismissal of some or all of the charges in the original prosecution. Although in theory there might be some remote chance that law enforcement planted the DNA evidence on the vaginal swab, that theory is unsupported by any evidence and the chance is too remote to satisfy the reasonable probability standard in ORS 138.692(6)(d) and (7)(d). Petitioner presented evidence from an expert that improvements in DNA testing can determine the individual male whose DNA was on the vaginal swab. Thus, the trial court did not err when it granted DNA testing of the vaginal swab and denied DNA testing of the other evidence.

Affirmed.